UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Timothy Haskell

        v.                                    Case No. 17-cv-658-JL

Nancy A. Berryhill, Acting
Commissioner of Social Security


**REPORT AND RECOMMENDATION**

Timothy Haskell challenges the Social Security

Administration's denial of his claim for Supplemental Security

Income ("SSI").  An administrative law judge ("ALJ") determined

that Haskell was not disabled as of January 1, 2016, because the

severe impairments from which he suffers did not meet or

medically equal a listing in the Social Security regulations and

Haskell retained a residual functional capacity ("RFC") to

perform jobs that exist in sufficient numbers in the national

economy.  See 20 C.F.R. § 416.905(a).  The Appeals Council

denied Haskell's request for review, rendering the ALJ's

decision the Acting Commissioner's final decision on Haskell's

application.  See id. § 416.1481.  Haskell sought judicial

review in this court, see 42 U.S.C. § 405(g), and the case was

referred to the undersigned magistrate judge for report and

recommendation.

Haskell moves to reverse the Acting Commissioner's decision

(doc. no. 9), and the Acting Commissioner cross-moves to have

that decision affirmed (doc. no. 11).  Finding no reversible
error, the court recommends that the district judge deny
Haskell's motion and grant the Acting Commissioner's motion.

### Standard of Review

When reviewing the final decision of the Acting
Commissioner, the court "is limited to determining whether the
ALJ used the proper legal standards and found facts upon the
proper quantum of evidence."  Ward v. Comm'r of Soc. Sec., 211
F.3d 652, 655 (1st Cir. 2000).  The court defers to the ALJ's
findings of fact so long as they are supported by substantial
evidence.  Id.  "Substantial-evidence review is more deferential
than it may sound," requiring "more than a scintilla of
evidence" but less than a preponderance.  Purdy v. Berryhill,
887 F.3d 7, 13 (1st Cir. 2018) (citations and internal quotation
marks omitted).  Even if the record could support a different
conclusion, the court must affirm the ALJ's findings when "a
reasonable mind, reviewing the evidence in the record as a
whole, could accept it as adequate to support [the ALJ's]
conclusion."  Id. (brackets, ellipsis, quotation marks, and
citations omitted).  The ALJ is responsible for determining
issues of credibility, drawing permissible inferences from the
evidence in the record, and resolving conflicts in the record
evidence.  See id.

2

### Background[1]

Haskell was found to be disabled as a child and received childhood SSI benefits.  See doc. no. 12 at 1.  His disability was redetermined when he turned 18 under the criteria applied when an adult applies for SSI benefits.  See 42 U.S.C. § 1382c(a)(3)(H)(iii); 20 C.F.R. § 416.987.  Under those criteria, Haskell was found to not be disabled, and that determination was upheld on reconsideration. See doc. no. 12 at 1.  Haskell timely requested a hearing before an ALJ, which was held on July 26, 2017.  Id.  Haskell appeared at the hearing with counsel and offered testimony.  See Admin. Rec. at 39-57. A vocational expert also testified at the hearing.  Id. at 57-62.  On August 24, 2017, the ALJ issued an unfavorable decision.

In reaching her decision, the ALJ employed the requisite five-step sequential analysis.  See 20 C.F.R. § 416.920.  The ALJ determined that the first step — whether the claimant is engaged in substantial gainful activity — does not apply when redetermining whether a person who received benefits as a child is entitled to benefits as an adult.  See 20 C.F.R. § 416.987(b).  At the second step, the ALJ concluded that Haskell

---

[1] The court provides a brief summary of the relevant facts. A more detailed recitation can be found in the parties' joint statement of facts (doc. no. 11), which the court incorporates by reference.

had the following severe impairments: "complex cyanotic
congenital heart disease, asthma, anxiety disorder, and a
learning disorder." Admin. Rec. at 17. At step three, the ALJ
determined that Haskell's impairments did not meet or medically
equal the severity of one of the impairments listed in the
Social Security regulations. Id.; see also 20 C.F.R. §§
416.920(d), 416.925, and 416.926.

At step four, the ALJ considered whether Haskell retained
the RFC to perform work as defined in 20 C.F.R. § 416.967.
Admin. Rec. at 20. The ALJ determined that since January 1,
2016, Haskell retained the RFC to perform light work, subject to
certain limitations. Admin Rec. at 20; see also 20 C.F.R. §
416.967(b) (light work). In reaching her conclusion, the ALJ
considered the medical evidence in the record, certain medical
opinions, and Haskell's own statements and testimony. See
Admin. Rec. at 20.

As to Haskell's physical impairments, the ALJ concluded
that the medical evidence demonstrated that Haskell had "a
history significant for complex cyanotic congenital heart
disease, as well as asthma," but that his treatment notes showed
that his conditions were "well managed." Id. at 21. In
addition to Haskell's treatment notes, the ALJ considered
medical opinions on Haskell's physical impairments from Dr.
Michael Flanagan, Haskell's treating cardiologist; APRN

Catherine Holub-Smith, who treated Haskell for general medical issues; and Dr. Louis Rosenthall and Dr. Jonathan Jaffee, both state agency consultants. See id. at 24. While the ALJ gave great weight to Dr. Flanagan's opinion that Haskell required "some environment exposure limitations," she concluded that Dr. Flanagan's opinion was entitled to little weight overall because it was not supported by his own treatment notes or by the other medical evidence in the record. Id. at 23. The ALJ gave APRN Holub-Smith's opinion little weight on the basis that, as an APRN, Holub-Smith was not an acceptable medical source under the Social Security regulations and because her opinions were similarly not supported by the medical evidence or her own treatment notes. Id. at 24. The ALJ gave Dr. Rosenthall's opinion great weight, concluding that it was consistent with both the medical evidence in the record and Haskell's own representations about his ability to engage in daily activities. See id. at 24-25. Though the ALJ acknowledged that additional treatment notes were added to the record after Dr. Rosenthall performed his review, she concluded that those notes and the record generally did not demonstrate that Haskell's condition meaningfully changed during that time period. Id. at 24. The ALJ gave Dr. Jaffe's opinion partial weight, concluding that all of the limitations Dr. Jaffe identified were well supported in

5

the record except for his opinion that Haskell would be limited
to sedentary work.  Id. at 25.

As to mental health, the ALJ determined that the treatment
notes in the record supported the conclusion that Haskell had an
anxiety disorder and a learning disorder.  See id.  The ALJ
concluded that "[t]he record overall does support some work-
related limitations due to [these impairments]," but that "the
treatment notes do not suggest that [Haskell] requires
limitations in excess of those identified" in the RFC.  Id. at
27.  The ALJ also considered the medical opinions of David
Ferrulo, MSW, who provided Haskell with mental-health treatment,
and state-agency consultants Dr. Michael Schneider and Dr.
Patricia Salt, who reviewed medical evidence that included
assessments of Haskell's mental functioning performed by Dr.
William Dinan and Dr. Ross Gourvitz.  Id. at 28-29.  The ALJ
gave MSW Ferrulo's opinion on Haskell's social interactions and
adaptations partial weight, concluding that the record evidence
did not support the full extent of MSW Ferrulo's recommended
restrictions.  See id. at 27-28.  The ALJ concluded that the
medical evidence supported MSW Ferrulo's opinion that Haskell
had difficulty tolerating stress, but found that this limitation
was "fully accounted for in the RFC."  Id. at 28.  The ALJ did
not find persuasive Dr. Schneider's conclusion that Haskell had
no mental impairments, noting that additional treatment notes

6

were added to the record after Dr. Schneider performed his review showing that Haskell required some limitations based on mental health.  Id.  For the same reason, the ALJ was not persuaded by Dr. Salt's opinion that Haskell did not have a severe mental health impairment.  See id.

    The ALJ also considered Haskell's own statements and testimony.  She concluded that Haskell's impairments could reasonably be expected to produce the symptoms he described at the hearing.  See id. at 21.  But she found that Haskell's statements about the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with the medical evidence or other evidence in the record."  Id.  She therefore only accepted Haskell's statements "to the extent they can reasonably be accepted as consistent with the objective medical and other evidence."  Id.

    Having concluded that Haskell retained the RFC to perform light work with certain limitations, the ALJ turned to step five of the sequential analysis: whether jobs existed in significant numbers in the national economy that Haskell could perform.  An independent vocational expert testified that an individual with Haskell's age, education, work experience, and RFC could perform several jobs that existed in significant numbers in the national economy as of January 1, 2016.  See id. at 29-30.  Relying on

this testimony, the ALJ concluded that Haskell was not disabled.
Id. at 30.

## Discussion

Haskell contends that the ALJ erred in weighing the medical
opinions in the record and in evaluating his statements and
testimony regarding his symptoms and limitations.  The court
considers each issue in turn.

A.    Medical Opinions

Broadly speaking, Haskell argues that the ALJ erred in
giving greater weight to Dr. Rosenthall's opinion than she did
to the opinions of Haskell's treating sources, Dr. Flanagan and
APRN Holub-Smith.  With respect to Dr. Flanagan, Haskell
contends that the ALJ erred in concluding both that Dr.
Flanagan's opinion was not consistent with his own treatment
notes or with Haskell's activities of daily living and that Dr.
Flanagan did not provide full support for the limitations he
identified.  Haskell similarly argues that the ALJ erred in
concluding that APRN Holub-Smith's opinion was inconsistent with
Haskell's activities of daily living and that APRN Holub-Smith's
opinion was entitled to less weight because she did not provide
an opinion under all of the areas identified on the opinion
form.  Haskell further contends that the ALJ's decision fails to
describe any aspect of APRN Holub-Smith's treatment notes that

8

was inconsistent with her opinion statement.  Finally, Haskell

contends that the ALJ erred in giving great weight to Dr.

Rosenthall's opinion because Dr. Rosenthall reached his opinion

without considering all of the treatment notes that were

available at the time of the ALJ's decision.

A treating source's medical opinion is entitled to

controlling weight when it is "well-supported by medically

acceptable clinical and laboratory diagnostic techniques and is

not inconsistent with the other substantial evidence in [the]

case record."  20 C.F.R. § 416.927.[2]  When an ALJ does not give

controlling weight to the medical opinion of a treating source,

she must determine the weight to give that opinion by applying

the factors listed in 20 C.F.R. § 416.927(c)(2) through (c)(6).

Id.  An ALJ must give "good reasons" for the weight she gives a

treating source's medical opinion.  Id.  "Those reasons must

offer a rationale that could be accepted by a reasonable mind."

Bean v. Berryhill, 2019 DNH 016, 7 (McCafferty, J.).  "Where an

ALJ provides good reasons for giving little weight to a treating

source's opinion, [s]he is not required to expressly address

each of the factors set forth in [§ 416.927(c)]."  Id. at 8.

Here, the ALJ provided good reasons, supported by

substantial evidence, for giving greater weight to Dr.

---

    [2] This provision remains in effect for claims filed before
March 27, 2017.

Rosenthall's opinion than she did to the opinions of Haskell's

treating sources.  The ALJ expressly applied 20 C.F.R. § 416.927

when weighing the opinion evidence.  See Admin. Rec. at 20.  She

explained in detail why, in her view, Dr. Flanagan and APRN

Holub-Smith's opinions were not supported by the medical

evidence in the record.  She also explained in detail why she

gave Dr. Rosenthall's opinion great weight and why the

additional medical evidence added to the record after Dr.

Rosenthall rendered his opinion did not change that conclusion.

A reasonable mind, when reviewing the medical evidence in the

record, could come to the same conclusions the ALJ reached for

substantially the same reasons.  The ALJ accordingly did not err

in assigning the weight she did to Dr. Rosenthall, Dr. Flanagan,

and APRN Holub-Smith's medical opinions.  See Dimambro v. U.S.

Soc. Sec. Admin., Acting Comm'r, 2018 DNH 004, 28-35 (Barbadoro,

J.) (upholding an ALJ's decision to give little weight to a

treating source's opinions when those opinions were inconsistent

with the treatment notes and other medical evidence).

      Haskell also argues that the ALJ erred in weighing the

opinion of MSW Ferrulo.  She argues that the ALJ made inaccurate

findings regarding Haskell's activities of daily living, that

the ALJ erred in concluding that Haskell's reports of symptoms

to MSW Ferrulo were inaccurate, and that the ALJ erroneously

concluded that MSW Ferrulo did not assess Haskell's functional

limitations outside of the context of situation stressors.  Once
again, however, the ALJ's conclusions are based on a reasonable
reading of the medical evidence in the record.  They are
accordingly supported by substantial evidence.

In sum, the ALJ did not err in weighing the medical opinion
evidence in the record.

B.    Statements and Testimony

Haskell also contends that the ALJ erred in evaluating his
statements and testimony regarding his symptoms and limitations
when determining his RFC.  Though Haskell cites Social Security
Ruling 16-3p, he does not actually contend that the ALJ failed
to properly apply that provision. Rather, he contends that the
ALJ "erroneously evaluated [his] testimony regarding his 'work
activity' and 'activities of daily living'"; improperly
concluded that the symptoms and limitations he reported to MSW
Ferrulo were inaccurate; and erred in concluding that his
statements to MSW Ferrulo were not reflective of his baseline
level of functioning throughout the period under review.  See
doc. no. 9-1 at 11-12.

The court discerns no error in the ALJ's evaluation of
Haskell's statements and testimony.  The ALJ explained in detail
why she did not find Haskell's statements about the intensity,
persistence, and limiting effects of his symptoms to be
"entirely consistent with the medical evidence and other

11

evidence in the record."  Admin. Rec. at 21.  Her reasoning, and
the conclusions stemming therefrom, are based on a reasonable
reading of the record evidence when considered as a whole.  See
Purdy, 887 F.3d at 13.  They are thus supported by substantial
evidence and may not be disturbed.  See id.

The court accordingly concludes that the ALJ did not err in
evaluating Haskell's statements and testimony regarding his
symptoms and limitations.  See Ward, 211 F.3d at 655.

## Conclusion

Haskell's arguments on appeal reflect a dissatisfaction
with the ways in which the ALJ resolved conflicts in the facts
in the record and the inferences the ALJ drew from the record
evidence.  But such determinations are fully within the province
of the ALJ and must be upheld unless they are not supported by
substantial evidence.  See Purdy, 887 F.3d at 13.  "While the
record arguably could support a different conclusion, there is
clearly substantial evidence to support the ALJ's findings."
Applebee v. Berryhill, 744 F. App'x 6, 6 (1st Cir. 2018).  The
court accordingly recommends that the district judge deny
Haskell's motion to reverse the Acting Commissioner's decision
(doc. no. 9) and grant the Acting Commissioner's cross-motion to
affirm that decision (doc. no. 11), and the clerk of the court

should be directed to enter judgment in accordance with this

order and close the case.

Any objections to this Report and Recommendation must be

filed within fourteen days of receipt of this notice.  See Fed.

R. Civ. P. 72(b)(2).  The fourteen-day period may be extended

upon motion.  Failure to file specific written objections to the

Report and Recommendation within the specified time waives the

right to appeal the district court's order.  See Santos-Santos

v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016); Fed. R.

Civ. P. 72(b)(2).

_____
Andrea K. Johnstone
United States Magistrate Judge

February 6, 2019

cc:   D. Lance Tillinghast, Esq.
      Terry L. Ollila, Esq.